IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRELL B. HARROLD,** | : | |
| | : | **Civil No. 1:13-CV-01505** |
| **Petitioner** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT** | : | |
| **MICHAEL J. MARLOW,** | : | |
| | : | **Judge Sylvia H. Rambo** |
| **Respondent** | : | |

# M E M O R A N D U M

Petitioner Darrell B. Harrold ("Harrold"), who is presently incarcerated at the State Correctional Institution in Albion, Pennsylvania, initiated this action by filing a *pro se* petition for writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2254. (Doc. 1.) In the petition, Harrold challenges his 2005 convictions and sentence in the Court of Common Pleas of Lycoming County, Pennsylvania ("trial court"). For the reasons that follow, the petition will be denied.

## I.    Background

The trial court summarized the facts leading to Harrold's arrest and eventual conviction as follows:

> On May 8, 2004 Patrolman Thomas Bortz (Bortz) of the Williamsport Bureau of Police (WBP) arrived at a residence to meet with representatives from

Children and Youth Services in investigation of a mother using/selling cocaine from the home. [Harrold] answered the door dressed only in underwear and, according to Bortz, had an erection.  He reported that he was alone at the residence with the mother's two children.  Bortz detected an odor of alcoholic beverages coming from [Harrold].  Bortz described [Harrold]'s behavior as apologetic, talkative, and nervous.  The Children and Youth representatives expressed some concern about the alcholic odor with regard to caring for the children, but then exited the residence.  The following day, Children and Youth Services received a report of sexual abuse involving [Harrold].  The report alleged that [Harrold] had performed oral sex on two boys, ages six and eight. An investigation followed.  Victim [N.F.], age six, was interviewed first.  He reported that [Harrold] touched him during a game of 'dare.'  The victim reported oral sex occurring between each of the boys and [Harrold].  He also reported anal sex performed on him by [Harrold]. [R.F], [Harrold]'s nephew also described the game of 'dare.' [R.F.] also described oral and anal sex acts between the boys and [Harrold].  Both victims alleged that [Harrold] had given them sips of beer during the game.

(Doc. 18-4 at 22–23.)  On November 23, 2004, after a two-day jury trial, Harrold was found guilty of five counts of involuntary deviate sexual intercourse, two counts of aggravated indecent assault, two counts of indecent assault, one count of endangering the welfare of a child, and one count of corruption of minors.  (Doc. 18-5 at 33.) Harrold was sentenced to fifteen to thirty years of incarceration and ten years of consecutive probation.  (*Id.*)

Harrold then filed an appeal, claiming that the trial court erred by failing to merge the charges of aggravated indecent assault and involuntary deviate sexual intercourse for sentencing purposes.  (Doc. 18-4 at 1–13.)  The Superior Court upheld

Case 1:13-cv-01505-SHR-CP   Document 27   Filed 03/02/15   Page 3 of 18


the sentence, stating that the facts supported the inference that there were "two distinct crimes, justifying two distinct sentences." (Doc. 18-6 at 1–2.)

On October 21, 2006, Harrold filed a petition under Pennsylvania's Post-Conviction Relief Act (PCRA), claiming principally that his trial counsel was ineffective for failing to call character witnesses to testify to his character for truthfulness. (Doc. 18-7 at 2.) On April 27, 2007, Harrold's appointed PCRA counsel filed a "no-merit letter" and motion to withdraw pursuant to the rule set forth in *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988). (*Id.*) The PCRA court subsequently denied Harrold's petition without a hearing and granted PCRA counsel's motion to withdraw. (*Id.* at 2–3.)

After Harrold appealed the denial of his petition, the PCRA court requested that the Superior Court remand the case so that it could determine if Harrold's underlying claim of ineffective assistance of trial counsel had arguable merit. (*Id.* at 3.) The PCRA court eventually held two evidentiary hearings to determine whether trial counsel had a reasonable basis for not calling character witnesses. (*Id.* at 4.)

At the hearings, the PCRA court heard testimony from four witnesses that Harrold claimed would have testified at trial to his truthful character. (*Id.* at 5.) Much

of the argument at the hearings centered on the fact that Harrold had admitted in a videotaped interview that he had performed the sexual acts for which he was charged. (*Id.*)  At trial, Harrold claimed that he falsely confessed during the interview because he wanted to get the interview over with.  (*Id.*)  At the PCRA court's evidentiary hearing, Harrold's potential witnesses each testified that they were unaware of the videotaped confession and that they were unsure if Harrold would lie in such a situation.  (*Id.*)

After the hearings, the PCRA court again denied Harrold's petition, and Harrold again appealed.  (*Id.*)  The Superior Court upheld the denial of Harrold's petition and reaffirmed the trial court's rationale.  (*Id.* at 11.)  Specifically, the court found that it was reasonable for his trial counsel to not call witnesses to testify about Harrold's truthful character, as the jury may well have inferred from this testimony that it was even more likely that Harrold was telling the truth in his videotaped confession, and that Harrold was not prejudiced by the lack of character testimony.  (*Id.* at 8–10.)  Harrold filed a petition for allowance of appeal with the Pennsylvania Supreme Court, but that petition was denied.  (Doc. 19 at 3.)

Harrold filed the instant petition for writ of habeas corpus on June 15, 2013. (Doc. 1.)  Harrold raises two grounds for relief in his petition: 1) his trial counsel was

4

ineffective for failing to inform Harrold of his right to call character witnesses on his behalf, and 2) his trial counsel was ineffective for failing to prepare an adequate defense.  (Doc. 1 at 5–6.)  In their response, Respondents contend that the first ground was properly adjudicated by the state courts and that the second ground was never exhausted in the state courts and is now procedurally defaulted.  (Doc. 19 at 5–8.)  For the reasons that follow, the petition will be denied.

## II.  Discussion

### A.  Exhaustion of State Court Remedies

Outside certain narrow exceptions, state prisoners are required to exhaust all available state court remedies for their claims prior to submitting those claims for federal habeas corpus review.  28 U.S.C. § 2254(b).  In order to fulfill this requirement, federal constitutional claims must be "fairly presented" to the state courts, meaning that the petitioner must present the same factual and legal basis for the claim to the state court to put the court "on notice that a federal claim is being asserted."  *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).  While a petitioner need not cite "book and verse" of the United States Constitution, *Picard v. Connor*, 404 U.S. 270, 277 (1971), the petitioner's state court pleadings must present

"the legal theory and supporting facts asserted in the federal habeas petition in such a manner that the claims raised in the state courts are 'substantially equivalent' to those asserted in the federal court." *Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1996). The mere similarity of a claim raised in the state courts with one in a federal habeas petition is insufficient to consider the federal claim exhausted. *Picard*, 404 U.S. at 276. "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). The petitioner has the burden of establishing that the exhaustion requirement has been met. *Ross v. Petsock*, 868 F.2d 639, 643 (3d Cir. 1999); *O'Halloran v. Ryan*, 835 F.2d 506, 508 (3d Cir. 1987).

## B.   **Procedural Default**

If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are considered procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *Lines*, 208 F.3d at 160.

6

A federal habeas court cannot review the merits of defaulted claims unless the petitioner demonstrates that either: (1) there is "cause" for the procedural default and the alleged violation of federal law resulted in "actual prejudice"; or (2) failure to consider the claims will result in a "fundamental miscarriage of justice." *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750; *Caswell v. Ryan*, 953 F.2d 853, 857, 861-62 (3d Cir. 1992). To satisfy the first exception, a petitioner must show: (1) cause for his failure to raise his claim in state court; and (2) prejudice to his case as a result of that failure. *Coleman*, 501 U.S. at 750. To demonstrate "cause" for a procedural default, the petitioner must show that something "external" to the defense impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Once "cause" has been successfully demonstrated, a petitioner must then prove "prejudice." "Prejudice" must be something that "worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id*. at 494.

Alternatively, a federal court may excuse a procedural default when the petitioner establishes that failure to review the claim will result in a fundamental miscarriage of justice. *See Werts v. Vaughn*, 228 F.3d 178, 192-93 (3d Cir. 2000). A

credible allegation of "actual innocence" constitutes a "miscarriage of justice" that

enables a federal court to hear the merits of otherwise procedurally defaulted habeas

claims. *Hubbard v. Pinchak*, 378 F.3d 333, 338 (3d Cir. 2004). The fundamental

miscarriage of justice exception, as defined by the United States Supreme Court, is

confined to cases of actual innocence as compared to legal innocence, where the

petitioner can show that it is more likely than not that no reasonable juror would have

found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*,

513 U.S. 298, 327 (1995). "To be credible," a claim of actual innocence must be

based on reliable evidence not presented at trial. *Id*. at 324.

### C.   Merits Review

The scope of this court's review on the merits of the issues presented in a

petition for a writ of habeas corpus by a prisoner in the custody of a state court is set

forth in 28 U.S.C. § 2254(d). That section states, in relevant part, that exhausted

claims that have been adjudicated on the merits by the state courts are subject to

review under the standard of whether they are "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a

decision that was based on an unreasonable determination of the facts in light of the

8

evidence presented in the State court proceeding," § 2254(d)(2).  AEDPA places the burden on the petitioner to make this showing.  *Williams v. Taylor*, 529 U.S. 362 (2000).

The "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have independent meaning.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state court judgment is "contrary to" federal law when it is "diametrically different, opposite in character or nature, or mutually opposed" to "clearly established" decisions of the United States Supreme Court.  *Williams*, 529 U.S. at 405.  This may occur if "the state court ignores or misapprehends clear precedent or it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Wilkerson v. Klem*, 412 F.3d 449, 452 (3d Cir. 2005) (quoting *Williams*, 529 U.S. at 406).  Alternatively, "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case."  *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 519, 520 (2003)).  For purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state

9

court was erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 75–76 (quoting *Williams*, 529 U.S. at 411). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. *Andrade*, 538 U.S. at 75. A state court's decision is not objectively unreasonable so long as at least some "fairminded jurists" could disagree over its correctness. *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 786 (2011).

Turning to Section 2254(d)(2), as well as the related Section 2254(e), the test for the "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. *Rountree v. Balicki*, 640 F.3d 530, 537 (3d Cir. 2011) (citing *Rice v. Collins*, 546 U.S. 333, 338–339, 126 S. Ct. 969, 163 L.Ed. 2d 824 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing *Miller-El v. Dretke*, 545

U.S. 231, 240 (2005)); *see also Simmons v. Beard*, 590 F.3d 223, 231 (3d. Cir. 2009)

("Under the § 2254 standard, a district court is bound to presume that the state court's

factual findings are correct, with the burden on the petitioner to rebut those findings

by clear and convincing evidence.").  Further, as with § 2254(d)(1), the evidence

against which a federal court measures the reasonableness of the state court's factual

findings is the record evidence at the time of the state court's adjudication.  *Rountree*,

640 F.3d at 538 (citing *Cullen v. Pinholster*, 563 U.S. ___, ___, 131 S. Ct. 1388,

1401–03 (2011)).

> ### D.   <u>Analysis</u>

In the instant petition, one of Harrold's claims was adjudicated on the merits by

the state courts while the other has been procedurally defaulted.  This court will

review the merits of the first claim before examining the issue of procedural default

regarding the second.

> ### 1.   <u>Trial Counsel's Failure to Call Character Witnesses</u>

Harrold claims that, had his trial counsel advised him of his right to call

character witnesses, he "would have been able to provide witnesses" who could have

11

testified regarding both his character for truthfulness and for "trust and responsibility around young children and young boys."  (Doc. 2 at 1, 3.)  This court will first set forth the relevant Supreme Court precedent on this issue before determining whether the Superior Court's adjudication was erroneous under the AEDPA standards.

<b>a.    Supreme Court Precedent</b>

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The right to the assistance of counsel has long been recognized to apply in state prosecutions through its incorporation into the Due Process clause of the Fourteenth Amendment.  *Powell v. State of Alabama*, 287 U.S. 45 (1932).  The Supreme Court has also long recognized that "the right to counsel is the right to effective assistance of counsel."  *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970).

In *Strickland v. Washington*, the Court set forth the current two-prong test for determining whether counsel rendered constitutionally ineffective assistance.  466 U.S. 668 (1984).  Under *Strickland*, in order to succeed on a claim of ineffective assistance of counsel, a criminal defendant must show both that counsel's performance was "deficient" and that this deficient performance prejudiced his

12

defense.  *Id.* at 687.  When determining whether counsel's performance was deficient, courts "must be highly deferential," allowing counsel a "wide latitude . . . in making tactical decisions," and remain conscious of the "distorting effects of hindsight."  *Id.* at 689.  In order to establish the requisite prejudice, it must be shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A "reasonable probability" is, for the purpose of this test, "a probability sufficient to undermine confidence in the outcome."  *Id.*

## b.     State Court Adjudication

In affirming the PCRA court's denial of relief, the Superior Court applied a test that required Harrold to show that: 1) his "underlying claim" was of arguable merit; 2) his "counsel had no reasonable strategic basis for his or her action or inaction;" and 3) he "was prejudiced by counsel's act or omission."  (Doc. 18-7 at 7.)  Under this test, a 'finding of 'prejudice' requires the petitioner to show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  (*Id.* (quoting *Commonwealth v. Johnson*, 966 A.2d 523, 533 (Pa. 2009).)

13

The Superior Court agreed with the PCRA court's findings that Harrold's counsel had a reasonable strategic basis for not calling character witnesses and that Harrold was not prejudiced by this inaction.  (*Id.* at 8.)  More specifically, the court found that trial counsel could have reasonably determined that, after hearing Harrold's proposed witnesses testify to his character of truthfulness, the jury may have been even more skeptical of Harrold's explanation that he was coerced into a confession. (*Id.*)  The court further reasoned that, given the likelihood of this potential outcome, Harrold was not prejudiced by the omission of character witnesses.  (*Id.* at 8–9.) Because Harrold failed the second and third prongs of the this test, the Superior Court affirmed the PCRA court's denial of his petition.  (*Id.*)

The test used by the Superior Court was not contrary to the Supreme Court precedent on ineffective assistance of counsel claims.  In fact, it conforms closely to the requirements of *Strickland*; the third prong of this inquiry is the same standard as that used for the "prejudice" prong of *Strickland*, and the first two prongs are essentially two aspects of the "deficient performance" prong of *Strickland*. Furthermore, the Superior Court applied the law reasonably.  Given that Harrold's proposed witnesses did not know of the videotaped confession and stated that they were unsure whether he would lie because of "badgering," at least some jurists of

14

reason could find that trial counsel made a reasonable strategic decision in not calling these witnesses.  Harrold contends that the Superior Court erred by failing to take into account that these witnesses would have also testified about other relevant matters, such as his trustworthiness around children.  (Doc. 2 at 4.)  However, it would be reasonable to conclude that whatever benefit this may have provided would be outweighed by the aforementioned negative effect.

Thus, because the Superior Court reasonably applied a legal test that conformed to relevant Supreme Court precedent, Harrold's first claim must be denied.

## 2. Failure to Adequately Prepare a Defense

Harrold next claims that his trial counsel was ineffective for failing "to properly prepare an adequate defense" on his behalf.  (Doc. 1 at 6.)  Specifically, Harrold points to the fact that his trial counsel "never object[ed] to any of the statements given by Commonwealth witnesses in regards to their inconsistency."  (*Id.* at 6, 8.)  Respondents argue that this claim was not exhausted before the state courts and is now procedurally defaulted.  (Doc. 19 at 6.)  In the alternative, Respondents argue that there was no significant inconsistency in the testimony of the Commonwealth's witnesses.  (*Id.* at 5–6.)

Harrold included this claim in his First Amended PCRA Petition, which stated in part that "had trial counsel conferred with Petitioner prior to trial, trial counsel could have better prepared to cross examine and explore inconsistencies in the testimony of the Commonwealth's witnesses.  Petitioner avers that trial counsel was ineffective in that regard."  (Doc. 18-9 at 4.)  As Harrold's First Amended Petition was incorporated into his Second Amended Petition (Doc. 18-10 at 5), he did present this claim to the PCRA court.

However, Harrold appears to have abandoned this claim, as it is entirely absent from his brief to the Superior Court and in his Statement of Matters Complained of on Appeal, which only address the issue of trial counsel's failure to call character witnesses.  (*See* Doc. 18-5 at 1–45.)  Because Harrold would be procedurally barred from raising this claim before the state courts now, the claim is considered technically exhausted but procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 749 (1991).

This court cannot grant habeas relief for procedurally defaulted claims unless the petitioner establishes either: 1) that there was "cause" for the default and that the violation of federal law resulted in "actual prejudice"; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice."  *See McCandless v.*

16

*Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).  Harrold does not argue that there was such "cause" and "prejudice" or that failure to consider this claim will result in a "fundamental miscarraige of justice."

Because this claim has been procedurally defaulted and Harrold has not established an excuse for this default, this court must deny relief with regard to his second claim.

## III.   Conclusion

Harrold's first claim for relief was reasonably adjudicated by the state courts using standards that are in accord with relevant Supreme Court precedent, and his second claim has been procedurally defaulted.  For these reasons, his petition for writ of habeas corpus must be denied.

The court must now determine whether a certificate of appealability should issue.  A court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). This requires that the petitioner "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, the court denies a certificate of

appealability because jurists of reason would not find it debatable that Harrold's

petition must be denied for the reasons set forth above.

     An appropriate order will issue.

                      s/Sylvia H. Rambo
                    United States District Judge

Dated:  March 2, 2015.